Opinion
COLE, J.
In this matter we hold that the term "wages" as used in Labor Code section 216. subdivision (a) includes vacation pay and that the section does not violate the constitutional prohibition against imprisonment for debt.
The People appeal (Pen. Code, § 1466, subd. 1 (b)) from an order of dismissal which followed the sustaining of a demurrer.
Labor Code section 216,[1] subdivision (a) reads:
“In addition to any other penalty imposed by this article, any person... is guilty of a misdemeanor, who:
“(a) Having the ability to pay. willfully refuses to pay wages due and payable after demand has been made.”
The complaint, as amended, charged defendant with violating the statute by his refusal to pay vacation pay earned by and due to one Durham. The municipal court held that the facts alleged did not state a public offense, reasoning that vacation pay was “supplemental compensation” not intended to fall within the purview of the statute. We disagree, and accordingly we reverse the order.
Two questions are raised on this appeal: (1) Whether vacation pay is “wages” and (2). if so. whether the section runs afoul of the constitutional prohibition against imprisonment for debt.
*Supp. 11 I
"Wages" is defined in section 200 as follows: "As used in this article: [2] (a) `Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece. commission basis, or other method of calculation." That definition clearly is broad enough to include vacation pay. Such pay is obviously given to an employee only because the latter has rendered labor[3] to an employer. The trial court recognized this in its ruling, stating that vacation pay is neither a gratuity nor a gift. but rather is compensation supplemental to a wage agreement.
Neither respondent nor the trial court refer to section 200. Rather, they rely upon section 96. That section deals with the assignment of various types of claims to the Labor Commissioner. It lists “wage claims” separately from “Claims for vacation pay, severance pay, or other compensation supplemental to a wage agreement.” That language, by itself, could support an argument that the Labor Commissioner should treat wage claims as something different from claims for vacation pay. Such treatment, however, cannot control the specific definition of section 200.'
Further, the same article contains section 227.3. That section states: “Unless otherwise provided by a collective bargaining agreement, [4] whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy.” (Italics supplied.) This language is a clear indication that vacation pay is included within the definition of wages in section 216 and we hold to that effect.
*Supp. 12 “[PJursuant to the present day concept of employer-employee relations, the term ‘wages’ should be deemed to include not only the periodic monetary earnings of the employe but also the other benefits to which he is entitled as a part of his compensation. . . .” (Wise v. Southern Pac. Co. (1970) 1 Cal.3d 600, 607 [83 Cal.Rptr. 202, 463 P.2d 426].) An interest in a profit-sharing plan has been held to be wages within the definition of section 200. (Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1972) 24 Cal.App.3d 35 [100 Cal.Rptr. 791].) Vacation pay is no different.
Respondent and the trial court each cite People v. Power (1958) 159 Cal.App.2d Supp. 869 [324 P.2d 113], for the proposition that the dispute here is only civil in nature. The citation is off point. In Power, an employee had been paid the full amount agreed upon. After his discharge, he argued that he was entitled to the benefits of an agreement existing between his employer and a union. The case did not involve a wilful refusal to pay wages due, an element at issue here.
II
Respondent urges that to apply section 216 to claims relating to unpaid vacation pay would violate the constitutional prohibition against imprisonment for debt. The argument has no merit.
In re Trombley (1948) 31 Cal.2d 801 [193 P.2d 734] is dispositive.[5] The case involved a prosecution under section 216. The court rejected a contention that the constitutional provisions invalidated the section. Pointing out that, “[although by its terms the prohibition is directed to imprisonment in civil actions, it has been held to apply in a criminal proceeding where it appears that the legislation under which the accused is charged constitutes an attempt to make the mere act of failing to pay a debt a crime. . . .” (31 Cal.2d at p. 804), the court held that section 216, subdivision (a), was not of such character. That subdivision, it noted, imposed liability only on a person who has the ability to pay but wilfully refuses to do so (31 Cal.2d at pp. 805-806). The word “wilful.” the court noted, implies a purpose or willingness to commit the act (Pen. Code, § 7, subd. 1). Thus, subdivision (a) of section 216 makes it a crime for an employer with the ability to pay. knowingly and intentionally to refuse to do so. (31 Cal.2d at pp. 807-808.) Referring to the historical background *Supp. 13 of section 15 of article I of the Constitution, the court noted that the provision excepted “cases of fraud” from the prohibition against imprisonment for debt. The section, and similar sections in other state constitutions, were adopted to protect poor, but honest debtors unable to pay their debts. They were not intended to shield a dishonest person taking unconscionable advantage of another, the court said. (31 Cal.2d at p. 809.) The court concluded that “An employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which' prejudices the rights of his employee. Such conduct amounts to a ‘case of fraud’ within the meaning of the exception to the constitutional prohibition and may be punished by statute.” (31 Cal.2d at p. 810.)
Defendant points, however, to dictum in Trombley where it was stated: “It has long been recognized that wages are not ordinary debts, that they may be preferred over other claims, and that, because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay when it is due.”
He argues that vacation pay is not used to purchase “necessities” and that therefore vacation pay cannot be constitutionally included within the constitutional language. The argument misses the mark. The reference to “necessities of life” does not limit the applicability of the section. People v. Howard (1969) 70 Cal.2d 618 [75 Cal.Rptr. 761, 451 P.2d 401] illustrates this. There, the constitutional provision was held not to prevent criminal prosecution of a contractor under Penal Code section 484b who obtained construction funds and wilfully failed to pay them to those to whom they were due. A diversion of the funds with resultant harm to the homeowner or lender who provided them was held to be so against the “good morals and fair dealing” referred to in Trombley as to likewise constitute a case of fraud within the exception to the constitutional ban on imprisonment for debt. (70 Cal.2d at pp. 621-623.) Such funds clearly were not needed by the homeowners or lenders for “the necessities of life.”
One other matter, not discussed in the briefs, most be considered. At the general election held on November 5, 1974, Proposition 7 was adopted by the voters. It was the result of a recommendation made by *Supp. 14 the California Law Revision Commission to the Legislature. In the words of the ballot title (Cal. Voter’s Pamp.) General Election November 5, 1974, page 26, the proposition “reorganizes and substantively amends various provisions of Article I . . . California Constitution. . . .” Among other amendments to article I the proposition repealed former section 15 dealing with imprisonment for debt and amended section 10 to include the former provision, expressing it, however, as follows: “A person may not be imprisoned in a civil action for debt . . . .” Thus, the exception relating to “cases of fraud” was deleted from the Constitution. We must determine whether this deletion was intended to broaden the prohibition.
The ballot arguments presented in the voter’s pamphlet did not expressly refer to the deletion of the “cases of fraud” language. However, we conclude that the deletion was not intended to have substantive effect. That clearly was the view of the amendment’s proponent, the Constitution Revision Commission. In recommending the proposed constitutional changes to the Legislature, the commission took the view that the fraud exception was superfluous and should be deleted for that reason.[6] In making its recommendation the commission did not cite In re Trombley, supra, 31 Cal.2d 801, and People v. Howard, supra, 70 Cal.2d 618, nor refer to the fact that each discusses the “cases of fraud” language in upholding criminal prosecutions. It is clear from the commission’s comments quoted in footnote 6, ante, however, that the intent of the commission was not to make a substantive change in deleting the “cases of fraud” exception. It is apparent from Trombleys analysis of the historical background of the constitutional provision that the reach of the provision is no greater than to “protect the poor but honest debtor” and that the provision was historically not intended to shield one who wilfully and intentionally committed a fraud by refusing *Supp. 15 to pay just debts. For these reasons, we follow Trombley, despite the deletion of the “cases of fraud” language from our present Constitution and uphold the constitutionality of section 216.
The judgment (order) is reversed.
Marshall. P. J.. and Alarcon. J.. concurred.

 All further section references are to sections of the Labor Code.

 The article commences with section 200 and ends with section 231.

 Section 200, subdivision (b), defines labor:
“(b) ‘Labor’ includes labor, work, or service whether rendered or performed under contract,'subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.”

 Section 227 makes it a misdemeanor to fail to make payments required to be made to a pension fund, health or welfare fund or vacation fund. Contrary to respondent’s argument, this section does not preclude application of section 216 to vacation pay cases. Section 227 deals with payments to funds; section 216 relates to payments to employees directly.

 At the time of the decision in Trombley and also at the time of the acts complained of herein, article I, section 15 of the California Constitution provided in relevant part “No person shall be imprisoned for debt in any civil action ... unless in cases of fraud

 “Existing Section 15 contains three basic prohibitions against imprisonment: The first in civil action for debt, the second for torts, and the third for militia fines in time of peace.
“The first prohibition stems from common-law England and the days when for failure to pay debts was commonplace. The existing Section states one exception—cases of fraud. After an extensive survey, the Commission concluded that in cases of fraud, our criminal law provides an adequate remedy and that in fact all cases of imprisonment for fraudulent failure to pay debts in California have been predicated on a finding of criminal liability. In short, the fraud exception in Section 15 has never enjoyed any legal vitality. For this reason, the Commission recommends that this exception be deleted. The main prohibition against imprisonment for debt, in the absence of a finding of criminal intent, should be retained. .. .” (Proposed Revision of the Cal. Const., 1971, part 5, p. 27. See also background materials presented to the commission: Article I Declaration of Rights Background Study 3, Oct. 1969, pp. 35, 36 and 39, 40.)